## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LEVAR PAYTON, #411-397 | * | |
| Plaintiff | * | |
| v | * | Civil Action No. ELH-15-3424 |
| WARDEN FRANK B. BISHOP, JR. | * | |
| Defendant | * | |

\* \* \* \* \*

| | | |
|---|---|---|
| LEVAR PAYTON, #411-397 | * | |
| Plaintiff | * | |
| v | * | Civil Action No. ELH-15-3648 |
| WARDEN FRANK B. BISHOP, JR. OFFICER DEAN ROUNDS, JR. | * | |
| | * | |
| Defendants | | |

### MEMORANDUM

Levar Payton, a Maryland Division of Correction ("DOC") prisoner housed at North

Branch Correctional Institution ("NBCI") in Cumberland, Maryland, filed the above-captioned

civil rights actions under 42 U.S.C. § 1983 against Warden Frank B. Bishop, Jr. and Correctional

Officer II Dean Rounds, Jr.[1]  Defendants in both cases have filed unopposed dispositive motions,

---

[1] Payton actually filed suit against Rounds in another case:  ELH-16-570.  There, he alleged, *inter alia*, a lack of food due to "starvation diets."  *Id.*, ECF 1.  According to Payton, Rounds allowed "tier workmen to poison [plaintiff's] meals…"  *Id.*, ECF 10-1 at 2.  That aspect of Civil Action ELH-16-570 was permitted to proceed as an amendment to Payton's Complaint in ELH-15-3648.  *See* ELH-16-570, ECF 3; ELH-15-3648, ECF 10. Therefore, the Clerk shall amend the docket in ELH-15-3648 to include Dean Rounds, Jr. as a defendant.

The remaining claims in ELH-16-570 were dismissed, without prejudice, on April 4, 2016 (ECF 4), because Payton failed to provide a timely and detailed supplement, as ordered in ECF 3.

supported by numerous exhibits.  Civil Action ELH-15-3424, ECF 12; Civil Action ELH-15-3648, ECF 13, as supplemented by ECF 16.[2]  Given the similarity of the allegations in the cases, they are best considered together for the purpose of dispositive review, and in the interest of judicial economy.

No hearing is necessary to resolve the motions.  *See* Local Rule 105.6 (D. Md. 2014).  For the reasons stated below, defendants' motions shall be construed as motions for summary judgment and shall be granted.[3]

## I.      The Factual Allegations

### A.  Plaintiff

Payton provides little factual detail in his complaints.

In Civil Action ELH-15-3424, Payton seeks $75,000 in damages and immediate release from incarceration.  He claims violations of the Equal Protection Clause of the Fourteenth Amendment and alleges generally that he was kept in solitary confinement and physically abused by NBCI staff following his alleged rape by a staff member.  ECF 1 at 3.[4]  Payton also alleges, without factual detail, that he has lost hearing in his left ear, has numbness in his feet caused by walking barefoot, and that unnamed officers have tampered with his mail and deny him medical

---

[2] Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Clerk informed Payton on April 18, 2016, and also on April 21, 2016, that defendants had filed dispositive motions; that Payton had seventeen days in which to file an opposition to the motions; and that if Payton failed to respond, his case could be dismissed and judgment could be entered against him, without further notice.  Payton has not responded to either motion.

[3] Rounds was never served with summons and complaint in Civil Action ELH-15-3648. Although Rounds is not a party to the dispositive motion, sufficient factual material filed on behalf of Defendant Bishop establishes that, had Rounds been served, he, too, would be entitled to summary judgment.

[4] Page references are to those reflected in the court's electronic case filing system.

treatment.  The complaint does not state the dates on which such misconduct is alleged to have occurred.  In addition, Payton claims that Warden Bishop has refused to respond to his grievances, filed pursuant to the Administrative Remedy Procedure ("ARP").  *Id.*

In Civil Action ELH-15-3648, Payton seeks $75,000 in damages, release from solitary confinement, and release from incarceration.  He alleges that Warden Bishop is "unable to govern the prison," an inadequacy that "violates due process [and his] constitutional rights." ECF 1 at 3.  Payton also claims that on an unspecified occasion he was "place[d] in a strip cell bare naked after physical sexual abuse." *Id.*  In addition, Payton asserts that he has lost hearing in the left ear, the cold cell causes foot sores and numbness, and he has been placed on "starvation diets." *Id.*  He also complains that he spent six days in a cell around September 26, 2015, and needs "serious medical attention," including mental health care for "psychotic illnesses." *Id.*

As indicated in Note 1, by Order of March 3, 2016, Payton's separate action against C.O. Dean Rounds, Jr. (ELH-16-570), concerning, in part, a lack of food due to "starvation diets," was permitted to proceed as an amendment or supplement to the Complaint in Civil Action ELH-15-3648.  *See* Civil Action ELH-16-570, ECF 3; Civil Action ELH-15-3648, ECF 10.  As supplemented, Payton alleges that Officer Rounds allows "tier workmen to poison [his] meals…" ELH-15-3648, ECF 10-1 at 2.

## B. Defendants

Defendants have submitted legal memoranda and numerous exhibits, from which the following is gleaned.

Payton has been housed in the segregation unit at NBCI since January 28, 2014.  ELH-15-3648, ECF 13-7, Rounds Decl. at ¶ 4; ECF 13-8, Gursky Decl. at ¶ 4.  He receives meals on

trays or in bags through a slot in the prison cell door.  *Id.*, ECF 13-7 at ¶ 5; ECF 13-8 at ¶ 5.

Meals are served by fellow prisoners who are supervised by prison staff.  *Id.*, ECF 13-7 at ¶ 6;

ECF 13-8 at ¶ 6.  Both Officer Rounds and Officer Gursky deny that they have ever refused to

provide meals to Payton.  *Id.*, ECF 13-7 at ¶¶ 7-8; ECF 13-8 at ¶¶ 7-8.

Payton was involved in a disturbance on September 19, 2015, when he kicked Officer D.

W. Rounds, Sr. in the face.  *See* ELH-15-3648, ECF 16-8 and attachments.  Defendant Rounds,

Jr. came to the assistance of Officer Rounds, Sr.  *Id.*, ECF 16-8 at 4.  Payton spit on Rounds, Jr.

and attempted to kick him and another officer.  *Id.* at 15.  Rounds, Jr. applied pepper spray to

Payton to quell Payton's combative behavior. *Id.* Thereafter, Payton was taken to the Medical

Room for treatment.  ECF 16-8 at 4; *see also* ECF 13-2 at 5.

Payton was placed on Staff Alert status for a six day period, beginning September 19,

2015.   ELH-15-3648, ECF 13-2 at 2-3, Staff Alert Designation Notice; Staff Alert

Removal/Review.  C.O. II Scott Beeman, an  employee of the Maryland Department of Public

Safety and Correctional Services ("DPSCS") for about 14 years, provided a Declaration (ELH-

15-3648, ECF 13-4), explaining that Payton was placed on Staff Alert on September 19, 2015,

due to his conduct on September 19, 2015.  *Id.* ¶ 4.  While on Staff Alert, Payton's meals were

delivered in paper bags, rather than trays. ECF 13-3, Staff Alert Procedures Manual, at 3.  To

receive the bags, Payton was required to go to the rear of his cell, face the rear wall, and get on

his knees.  *Id*.

Beeman indicated that Payton's segregation confinement sheet for the period September

19, 2015, to September 25, 2015, reflects the following as to meals:  Payton refused morning

meals offered during the 7 a.m. to 3 p.m. shift on September 19 and 20, 2015; he refused mid-

day meals offered during the 11 a.m. to 7 p.m. shift on September 20, 21, 23 and 24; and he

refused meals offered during the 3 p.m. to 11 p.m. shift on September 19, 20, 21, 22 and 23. ELH-15-3648, ECF 13-4, ¶ 5.

On September 27, 2015, Payton told Nurse Cassandra Oster that he had been on a hunger strike for seven days. *Id.,* ECF 13-2 at 4, Med. Note of 9/27/15.  Oster told Payton to place a sick call request. *Id.*

Payton met with Clinical Counselor Lauren Breitzel on September 28, 2015.  Breitzel reported Payton's problems were behavioral, rather than psychologically driven. *Id.*, ECF 13-2 at 5, Onsite Consult of 9/28/15.  Breitzel noted that housing unit staff would continue to monitor Payton and a plan for behavioral management would be discussed. *Id.*

In addition to Staff Alert Status, Payton was charged with two Inmate Rule violations as a result of the events of September 19, 2015.  ECF 16-8 at 15.  A hearing was held on September 29, 2015, and Payton was found guilty of the infractions.  ECF 16-8, attachments.  A sanction of 365 days of segregation was imposed, as well as 60 days of cell restriction.  ECF 16-8 at 23. Payton did not appeal the decision of the Hearing Officer.  ELH-15-3648, ECF 13-9, Farris Decl. at ¶ 5.

On May 24, 2015, Payton complained of foot burning and toenail fungus, indicating that those problems had just begun.  ELH-15-3648, ECF 13-6 (Medical Records), at 17.  He was initially given Ibuprofen.  Several days later, on May 29, 2015, he received ointment and antifungal cream, as well as medications for unrelated problems. *Id.* at 16.  He again complained of foot issues, and on June 23, 2015, he was prescribed Ibuprofen, Lubriskin Lotion, and tar shampoo. *Id.* at 15.  Payton complained again of foot issues on December 1, 2015, but refused to be seen by a prison physician the following day. *Id.* at 5.

NBCI prisoners are instructed how to report sexual assaults or sexual misconduct. ELH-15-3648, ECF 13-5, Rozas Decl. at ¶ 1. Despite such instruction, Payton did not report any sexual assault incidents under the requirements of the Prison Rape Elimination Act, 42 U.S.C. § 15601, *et seq. Id.* at ¶¶ 4-5.

Segregation prisoners receive many of the privileges afforded general population prisoners, but are kept from congregating with others. While in segregation, Payton is entitled to receive two showers a week; a weekly change of bedding; monthly haircuts; out-of-cell activity for one hour, five days a week; and medical care, including mental health care and dental care. ELH-15-3424, ECF 12-4, DCD 110-6 (VI)(D)(1-3); (H); (I). Payton also has access to educational services, library services, legal reference materials, a chaplain, and the commissary. *Id.*, DCD 110-6 (VI)(K-M, O, Q, R). The Warden may remove a prisoner from segregation at any time. *Id.*, DCD 110-6 (VI)(U)(1)(c).

Conditions of confinement claims are addressed through the grievance process, known as the Administrative Remedy Procedure or "ARP." Payton addressed many of his claims in a ARP grievance filed on November 6, 2015, in which he complained that he was placed in a strip cell for the six days preceding October 2, 2015, during which time he received no recreation or shower and was refused treatment for "phycosis." ELH-15-3648, ECF 13-2 at 6, NBCI 2296-15. The grievance was dismissed as untimely. *Id.* Payton did not file an appeal with the Commissioner of Correction regarding the dismissal. *Id.*, ECF 13-10, Ripps Decl. at ¶ 2. Defendants contend that, as a result of this failure, this court cannot address the merits of the conditions of confinement claims, because Payton did not exhaust his administrative remedies.

Adjustment hearing procedures and decisions are not subject to the grievance process. *See* ECF 16-3, DCD 185-003 at VI(N)(3)(b)(3). As noted, Payton was found guilty of

institutional rule violations on September 29, 2015, in Case 2015-021 and Case 2015-022.  ELH-15-3648, Declaration of Sgt. Jamie Farris, ECF 13-9 at 1.  Defendants allege that Payton failed to exhaust his right of appeal regarding his adjustment convictions and the segregation sentence imposed on him.[5]

As discussed in more detail, *infra,* in order to exhaust administratively a claim disputing a hearing officer's disciplinary decision, a prisoner must present his concerns on appeal to the Warden and, if dissatisfied with the response, then to the Inmate Grievance Office ("IGO").  *See* COMAR 12.02.27.33; COMAR 12.07.01.05; COMAR 12.07.01.06C.  Payton improperly complained of segregation confinement using the ARP process, resulting in the dismissal of his ARP complaint.  Case ELH-15-3648, ECF 13-2 at 7, Entry of January 4, 2016, NBCI-0038-16.  Payton should have appealed the Hearing Officer's decisions in those disciplinary cases to the Warden, and from there, to the IGO.

Robin Woolford, Executive Director of the IGO, has reviewed the IGO records to determine if Payton filed any grievances with the IGO since September 2015.  In his Declaration of April 15, 2016 (ELH-15-3648, ECF 13-11), he indicates that plaintiff filed 12 grievances since September 2015.  He notes an "appeal" on October 28, 2015, from a finding at a disciplinary hearing on an unspecified date, concluding that Payton committed rules violations.  Case ELH-15-3648, ECF 13-11, Woolford Decl., at 2.  It was administratively dismissed, effective February 9, 2016, when Payton refused to accept delivery of the IGO's response.  *Id.* at 2-3.  In addition, Payton filed several grievances on February 22, 2016, one of which concerned an appeal from a guilty finding after a disciplinary hearing.  *Id.* at 3.  There is no date as to the

---

[5] Payton does not indicate which of his many adjustment convictions are at issue in his complaints.  For the purpose of review, I assume he is protesting adjustment convictions arising out of incidents in September 2015, coinciding with his placement on Staff Alert status.  A log of Payton's extensive adjustment conviction history is attached to ELH-15-3424, ECF 12-3 at 2-3.

hearing and, as of the date of the Declaration, the IGO had not rendered a final decision.  *Id.*

Woolford recounts numerous other grievances filed by Payton throughout late 2015 and 2016.

*Id.* at 1-3.  *See also* Declaration of Christina Ripps, Case ELH-15-3648, ECF 13-10.

Additional facts are included in the Discussion.

## II.  Standard of Review

Defendants' motions are styled as motions to dismiss under Fed. R. Civ. P. 12(b)(6) or, in

the alternative, for summary judgment under Fed. R. Civ. P. 56.  Case ELH-15-3424, ECF 12;

Case ELH-15-3468, ECF 13.  A motion styled in this manner implicates the court's discretion

under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Vol. Fire Dept., Inc.*

*v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).  Ordinarily, a court "is not

to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to

dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).  However, under Rule

12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to

Rule 12(d).  If the court does so, "the motion must be treated as one for summary judgment

under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the

material that is pertinent to the motion." Fed. R. Civ. P. 12(d).  When, as here, the movant

expressly captions its motion "in the alternative," as one to dismiss or for summary judgment,

and submits matters outside the pleadings for the court's consideration, the parties are deemed to

be on notice that  conversion under Rule 12(d) may occur; the court "does not have an obligation

to notify parties of the obvious."  *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261

(4th Cir. 1998).[6]

---

[6] In contrast, a court may not convert a motion to dismiss to one for summary judgment
*sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261
(stating that a district court "clearly has an obligation to notify parties regarding any court-

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)); *see Putney v. Likin*, ____ F.3d ____, No. 14-6882, slip op. at 13 (4th Cir. July 14, 2016). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

---

instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit …is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted). But, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted); *see also Putney*, slip op. at 14; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary," and the "nonmoving party's objections before the district court 'served as the functional equivalent of an

affidavit.'"   *Harrods,* 302 F.3d at 244-45 (internal citations omitted).   Moreover, "[t]his is especially true where, as here, the non-moving party is proceeding pro se" *Putney,* slip op. at 14.

Plaintiff has not filed an affidavit under Rule 56(d).   In light of the foregoing, I am satisfied that it is appropriate to address the defense motions as ones for summary judgment, as this will facilitate resolution of the case.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part:  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004).  The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility."  *Dennis v. Columbia Colleton Med*. *Ctr*., *Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002); *see FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.

Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black &. Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45.  Therefore,  in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility.

Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id.* at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Id.* at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

### III.    Discussion

Defendants argue, *inter alia*, that Payton's claims must be dismissed because he has failed to exhaust available administrative remedies, as required by the Prison Litigation Reform Act of 1995 ("PLRA"), 110 Stat. 1321-71, as amended, 42 U.S.C. § 1997e(a).[7]   The Prisoner Litigation Reform Act provides, in pertinent part:

> (a) Applicability of administrative remedies
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e.

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003), *aff'd*, 98 Fed. App'x 253 (4th Cir. 2004).[8]

---

[7] Defendants also argue that Payton received constitutionally adequate medical and mental health care; that his claim of sexual abuse is factually unsupported; that he cannot demonstrate mail tampering; and that his segregation time is not atypical. Further, Bishop argues that he cannot be held liable under the doctrine of respondeat superior. I need not reach these claims.

[8] Maryland appellate case law indicates that the administrative grievance procedure does not encompass "'every kind of civil matter that could be brought by a DOC inmate.'" *Massey v. Galley*, 392 Md. 634, 646, 898 A.2d 951, 958 (2006) (citation omitted). Rather, it applies only to matters that "relate to or involve a prisoner's 'conditions of confinement.'" *Id.* at 651, 898 A.2d at 960 (citation omitted). Thus, the grievance procedure does not apply to requests for public information under the Maryland Public Information Act, *see id.*, nor does it apply to

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. 199, 215-216 (2007); *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

The PLRA's exhaustion requirement serves several purposes. These include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones*, 549 U.S. at 219; *see Moore v. Bennette*, 517 F. 3d 717, 725 (4th Cir. 2008) (exhaustion means providing prison officials with the opportunity to respond to a complaint through proper use of administrative remedies). It is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase v. Peay*, 286 F. Supp. 2d at 530 (D. Md. 2003); *Gibbs v. Bureau of Prisons*, 986 F.Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance

---

medical malpractice claims against private medical service providers who treat inmates under contract with the DOC. *See Abramson v. Correctional Med. Servs., Inc.*, 359 Md. 238, 753 A.2d 501 (2000).

Moreover, the administrative grievance procedure does not apply to claims for compensation for disabilities resulting from "personal injury arising out of and in the course of [an inmate's] work for which wages or a stipulated sum of money was paid by a correctional facility," C.S. § 10-304, for which a claim to a different administrative body, the Sundry Claims Board, is the exclusive remedy. *See Dixon v. DPSCS*, 175 Md. App. 384, 927 A.2d 445 (2007). On the other hand, the grievance process does apply to a wide variety of claims that arise out of the conditions of confinement, even if the grievance process cannot provide a comprehensive remedy for such claims, such as tort claims of assault and battery against prison officers. *See McCullough v. Wittner*, 314 Md. 602, 552 A.2d 881 (1989).

process); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore,* 517 F.3d at 729; *see Langford v. Couch,* 50 F.Supp.2d 544, 548 (E.D. Va. 1999) ("[T]he PLRA amendment made clear that exhaustion is now mandatory."). The court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

An inmate need only exhaust "available" remedies.  42 U.S.C. § 1997e(a).  In *Ross v. Blake*, ____ U.S. ____, 136 S. Ct. 1850 (2016), the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA."  *Id.* at 1855.  In particular, it rejected a "special circumstances" exception to the exhaustion requirement.  *Id.* at 1856-57.  But, it reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'"  *Id.* at 1855.

The Fourth Circuit addressed the meaning of "available" remedies in *Moore v. Bennette, supra*, stating, 517 F.3d at 725:

 [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell*, 478 F. 3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F. 3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable

procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id.* at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

More recently, in *Ross*, the Supreme Court stated that an administrative remedy is available if it is "'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 136 S. Ct. at 1859 (quoting *Booth*, 532 U.S. at 738). Thus, an inmate must complete the prison's internal appeals process before bringing suit. *Chase v. Peay*, 286 F. Supp. 2d at 529-30.

The *Ross* Court outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play." *Ross*, 136 S. Ct. at 1859. These are when the remedy operates as a "simple dead end-with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" the administrative scheme might be so "opaque" as to become "practically speaking, incapable of use;" and prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60.

The Maryland Department of Public Safety and Correctional Services has made an "administrative remedy procedure" ("ARP") available to Maryland State prisoners for "inmate complaint resolution." Code of Maryland Regulations ("COMAR") 12.07.01.01B(1) (defining ARP).[9] This procedure falls within 42 U.S.C. § 1997e(a), as it applies to the submission of "grievance[s] against . . . official[s] or employee[s] of the Division of Correction." Md. Code

---

[9] By Order of June 22, 2016, docketed in both ELH-15-3424 and ELH-15-3648, I directed counsel for defendants to provide a supplemental memorandum clarifying the procedures for an inmate to appeal a disciplinary sanction as well as the process for ARPs. *See* ELH-15-3424, ECF 14; ELH-15-3648, ECF 15. Defendants responded on June 29, 2016, although only in ELH-15-3468. *See id.*, ECF 16. In my Order, I expressly permitted plaintiff to respond to the defense submission, but he has failed to do so.

(2008 Repl. Vol.), Correctional Services Article ("C.S."), § 10-206(a); *see generally* C.S. §§ 10-201 *et seq.*

Regulations promulgated by DPSCS concerning the administrative remedy procedure define a "grievance' to include a "complaint of any individual in the custody of the [DOC] . . . against any officials or employees of the [DOC] . . . arising from the circumstances of custody or confinement." COMAR 12.07.01.01B(8). An inmate "must exhaust" the ARP process as a condition precedent to further review of the inmate's grievance. *See* C.S. § 10-206(b); *see also* COMAR 12.07.01.02D; DCD 185-002 (effective August 27, 2008). As a matter of law, exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006).

To pursue a grievance, a prisoner confined in a DOC facility may file with the Inmate Grievance Office ("IGO") a grievance against any DOC official or employee. ECF 16-1, Supplemental Exhibit 1, C.S. § 10-206(b). However, if administrative remedies that the IGO considers to be reasonable and fair are made available by the DOC institution, the prisoner must first pursue such remedies, before filing a complaint with the IGO. *Id.* And, DPSCS has established an administrative remedy procedure process that applies to DOC facilities. ECF 16-2, Supplemental Exhibit 2, OPS.185.0002.02.

The ARP process consists of two steps. For the first step, a prisoner is required to file his initial ARP with his facility's "managing official." *Id.*, OPS.185.0002.05C(1). Correctional Services Article, § 1-101(k) defines a managing official "as the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility." In the DOC, each facility's warden is responsible for the administrative remedy procedure at the institutional level. ECF 16-3, Supplemental Exhibit 3, DCD # 185-

17

003VI.  Moreover, the ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later.  COMAR 12.07.01.05A.

The second step in the ARP process occurs if the managing official denies a prisoner's initial ARP.  In that circumstance, the prisoner has 30 days to file an appeal with the DPSCS's Deputy Secretary for Operation's ("DSO") or that official's designee.  ECF 16-2, OPS.185.0002.05C(2).  For prisoners in DOC facilities, the Commissioner of Correction is the official to whom this appeal is sent.  ECF 16-4, Supplemental Exhibit 4, DCD # 185-004VI.  As noted, this is the second step in the ARP process.  ECF 16-2, Supplemental Exhibit 2, OPS.185.0002.05C(2).

If the Commissioner of Correction denies an appeal, the prisoner has 30 days to file a grievance with the IGO.  ECF 16-2, OPS.185.0002.05D; C.S. § 10-206(a); C.S. § 10-210; COMAR 12.07.01.05B; *see also* DCD 185-002, § VI(N)(1).  When filing with the IGO, a prisoner is required to include copies of the following: the initial request for administrative remedy, the warden's response to that request, a copy of the  ARP  appeal  filed  with  the Commissioner  of  Correction,  and  a  copy  of  the Commissioner's response.  ECF 16-5, Supplemental Exhibit 5, COMAR 12.07.01.04(B)(9)(a).  If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing.  C.S. § 10-207(b)(1); *see* COMAR 12.07.01.07B.  An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii). However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings. *See* C.S. § 10-208(2)(c); COMAR

12.07.01.07-.08.  The conduct of such hearings is governed by statute.  *See* C.S. § 10-208; COMAR 12.07.01.07D; *see also* Md. Code, Title 10 of the State Government Article.

A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination. C.S. § 10-209(b)(1)(i), (ii); COMAR 12.07.01.10A.  However, a decision concluding that the inmate's complaint is wholly or partly meritorious constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge. *See* C.S. § 10-209(b)(2); (c).

The final agency determination is subject to judicial review in Maryland State court, so long as the claimant has exhausted his/her remedies.  *See* C.S. § 10-210.  But, an inmate need not seek judicial review in State court in order to satisfy the PLRA's administrative exhaustion requirement.  *See*, *e.g.*, *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir.) ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court."), *cert. denied*, 537 U.S. 949 (2002).

The ARP process applies to the majority of inmate complaints.  However, it does not apply to case management decisions, which are to be directly grieved to the IGO. ECF 16-2*,* Supplemental Exhibit 2, OPS.185.0002.05F(1).  It also does not apply to Maryland Parole Commission procedures and decisions to withhold mail, or Prison Rape Elimination Act related claims.   *Id*., OPS.185.0002.05F(2),(4),(5).    Those categories of complaints are addressed through separate administrative processes.  *Id*.

Finally,  the  ARP  process  does  not  apply  to  complaints  relating  to  prisoner disciplinary procedures and decisions. ECF 16-2, OPS.185.0002.05C(3). If a prisoner is found guilty of a rule violation, the prisoner is entitled to appeal the hearing officer's

guilty decision or sanction to the warden of the facility where he or she is incarcerated. ECF 16-6, Supplemental Exhibit 6, COMAR 12.02.27.33(A)(1),(2). If the prisoner does not file a written appeal with the warden within fifteen days of receipt of the hearing officer's decision, he or she is considered to have waived the right to appeal. *Id.*, COMAR 12.02.27.33(A)(3). If the warden affirms the hearing officer's guilty finding or sanction, the prisoner may then appeal to the IGO. COMAR 12.02.27.33(D); *see also* COMAR 12.07.01.05 and .06C. When filing this appeal with the IGO, the prisoner is required to include a copy of the initial notice of inmate rule violation, the hearing record, the appeal to the warden, and the warden's response to the appeal. ECF 16-5, Supplemental Exhibit 5, COMAR 12.07.01.04(B)(9)(b).

While a prisoner may pursue the ARP process to allege that correctional officers used excessive force, such ARPs may be procedurally dismissed if the Internal Investigations Division ("IID") has decided to conduct an investigation into the use of force incident at issue in the ARP. ECF 16-2, Supplemental Exhibit 2, OPS.185.0002.05.E(6) & K(3)(e). If this procedural dismissal indicates that no further action may be taken through the ARP process, a prisoner may then file a grievance directly with the IGO, as there would be no further administrative remedies available through the ARP process. *See* Exhibit 1, § 10-206(b).

On October 28, 2015, the IGO received a grievance from Payton, which was designated as IGO No. 20151997. ECF 16-7, Declaration of Robin Woolford, with IGO No. 20151997 at 3-5. Payton alleged that he was given over three years of segregation for allegedly raping an inmate in 2013. *Id.* at 3. Payton contended that this sanction was unlawful because the inmate was lying and that he did not rape the inmate. *Id.* at 3-4. The grievance also contained complaints concerning a need for medical attention as to a loss of hearing, his need for

psychiatric treatment following placement in a strip cell, and the poisoning of his meals.  *Id.* at 5.[10]

Payton filed ARP NBCI 2296-15 on November 6, 2015, complaining of a need for "physical treatment" after six days in a "strip cell," without recreation or a shower.  ECF 13-2.[11] The ARP was dismissed for procedural reasons on November 9, 2015.  ECF  13-2 at 6.

Payton filed another grievance on December 5, 2015, claiming he suffered significant weight loss due to an unspecified illness.  *See Payton v. Lamp,* ELH-15-3863, ECF 7-3 at 8-9; *see also id.*, ECF 9.[12]  The ARP was dismissed on procedural grounds.  *Id.* at 8.  But, Payton was advised that he could resubmit his grievance.  *Id.*

---

[10]  I pause to note that Payton received a psychological consult while housed on segregation following his September 19, 2015, assault on corrections personnel.  ELH-15-3648, ECF 13-2 at 5, September 28, 2015 consultation with Lauren A. Beitzel, LCPC.

[11]  Presumably, this ARP referenced Payton's placement in temporary housing and Staff Alert Designation, imposed following his assault on corrections personnel on September 19, 2015.  *See* ELH-15-3648, ECF 13-2 at 2, Staff Alert Designation Notice from Lt. Donna Durst. Payton was removed from Staff Alert status, but remained under restriction, on September 25, 2015.  *Id.* at 3, Staff Alert Removal Review #3.

[12]  The case of *Payton v. Lamp* was assigned to me, and is a record subject to judicial notice.

"[A] court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'"  *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015); *see* Fed. R. Evid. 201(b)(2) (stating that a "court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied,* ____ U.S. ____, 132 S. Ct. 115 (2011); *Philips v. Pitt County Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).  In particular, pursuant to Fed. R. Evid. 201, a court may take judicial notice of an adjudicative fact if it is "not subject to reasonable dispute," in that it "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Of import here, in *Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 n. 1 (4th Cir. 1990), the Court recognized that a district court may "properly take judicial notice of its own records."

On January 12, 2016, Woolford wrote to Payton concerning his October 28, 2015 grievance, and citing COMAR 12/07.01.04(B)(9)(b), he advised Payton that the IGO could not consider his claim unless he provided a copy of his appeal to the Warden following the disciplinary hearing that sanctioned Payton with the disputed time in segregation. ECF 16-7 at 6-7.  The letter did not address Payton's additional conditions claims, however. The IGO attempted to send this letter to Payton on several separate occasions.  *Id.* at 8-9. Payton refused to receive the IGO's response each time.  *Id.*  Consequently, the IGO considered IGO No. 20151997 to have been abandoned and administratively dismissed this appeal. *Id.* at 9.

As noted, Payton also filed an ARP alleging he received excessive segregation time in connection with his adjustment convictions on September 29, 2015.  ELH-15-3648, ECF 13-2, ARP Index at 7.  But, as indicated, Payton did not appeal the Hearing Officer's guilty findings following the adjustment hearing, which resulted in his continuation on segregation. ECF 13-9, ¶¶ 4-5, Decl. of Jamie Farris.  Because this claim could not be addressed through the ARP process, it was dismissed.  ECF 13-2, ARP Index at 7.

On February 22, 2016, the IGO received a grievance from Payton, which was designated as IGO No. 20160249.  ECF 16-7, at 9, 10.  Payton alleged that he was sanctioned with excessive time in segregation.  *Id.* at 9.  By letter of April 18, 2016, Woolford advised Payton that the IGO could not consider his claim unless he provided the IGO with a copy of his appeal to the Warden following the disciplinary hearing imposing segregation, citing COMAR 12.07.01.04(B)(9)(b).  *Id.* at 11-12.  Payton failed to respond, and IGO No. 20160249 was administratively dismissed on May 20, 2016.  ECF 16-7 at 1-2, Woolford Decl., ¶ 3.

### IV.   Conclusion

Payton does not dispute defendants' assertion that he did not properly complete exhaustion of administrative remedies with regard to the allegations set forth in the consolidated complaints.   There is no indication that the ARP process was unavailable to him.   Thus, plaintiff's suits are subject to dismissal on this basis alone.   Further, defendants' unopposed and verified submissions provide ample evidence that Payton's segregation placement was justified, and that constitutional minima were met during such confinement.[13]

Defendants' motions for summary judgment are granted.   A separate Order follows.


Date:  July 21, 2016                                    _____/s/_____
                                                          Ellen L. Hollander
                                                          United States District Judge

---

[13] Although Payton failed to properly exhaust any of the claims before this court, record submissions show that Payton has received meals, medical care, psychological counseling, and, with the exception of the period spent on staff alert, the full range of recreational activities available to segregation prisoners at NBCI.